# AFFIDAVIT OF DAKARAI LARRIETT

NOW COMES, Dakarai Larriett, deposes and states as follows:

1. I am over the age of 18 and I am otherwise able to testify accurately and truthfully.

2. On April 10, 2024, at approximately 4 am, I, Dakarai Larriett, a Black gay man experienced a distressing incident involving a traffic stop and subsequent arrest for an alleged DUI. I strongly believe that my rights were violated during this encounter. The following events occurred:

3. Trooper George Michael Kanyuh (#1095) falsely claimed that I failed to come to a complete stop at a Pipestone Road traffic light and insisted that there was video evidence to support his accusation but that he would *not* ticket me for the alleged violation. However, my friend Tae, who was present as a passenger, confirmed that I did come to a full stop. Tae stated, "I knew you stopped at the light, that's why I was confused about why you got pulled over."

4. Trooper Kanyuh alleged that he detected the smell of a fruity drink on my breath. However, Tae contradicted this claim by saying, "Yeah, I noticed that when he first came up to the car and said he smelled a fruity drink. I didn't smell anything." Tae further added, "I was looking at you to see if you would agree with that because that was a lie. We were together for 2 hours, and I didn't smell any liquor."

5. Trooper Kanyuh repeatedly questioned me about my occupation, education level, degrees, and inquired about my vehicle. These inquiries seemed unrelated to the alleged DUI and appeared unnecessary.

6. Trooper Kanyuh conducted a series of sobriety tests in a cold and dark alley, including the alphabet test, countdown of numbers, closing eyes and touching nose, and walking in a straight line. It is important to note that I was wearing pajamas without a jacket, which was not suitable attire for such tests in that weather condition.

7. Trooper Kanyuh misconstrued our conversation during the traffic stop and falsely accused me of changing my story regarding alcohol consumption. I promptly corrected him, explaining that my statements were not contradictory and that he introduced a misleading "2-hour" qualification. I reaffirmed that I was not under the influence of alcohol or marijuana.

## AFFIDAVIT OF DAKARAI LARRIETT

8. When I questioned Trooper Kanyuh about the reason for my arrest, he stated that the sobriety test was not pass or fail but claimed, based on his "professional opinion," that I was under the influence of THC. He followed up by stating "we are going to find THC in your system."

9. Trooper Matthew Okaiye (#396), who was called as backup, asked unrelated questions about the length of time I had owned my car, if I liked it, and inquired about my career, education, and community connections. These questions seemed irrelevant to the alleged DUI.

10. Tae divulged that the reason for the traffic stop may have been racially motivated. Tae stated, "He didn't think Black people drive in style. I caught on that he really thought it wasn't yours. The white cop had the Black cop ask me if that was really your car. I said, 'Yeah, why wouldn't it be? He wouldn't be driving it if it wasn't his.'"

11. Trooper Kanyuh informed me that if I did not submit to a blood test at Lakeland Hospital, I would receive 6 points on my license and face license suspension. It is important to note that I was not ordered a breathalyzer test on site.

12. The troopers handcuffed me and took me to Lakeland Hospital, where I was compelled to sign a consent form for the blood test.

13. Subsequently, the troopers transported me to the Berrien County Jail. Upon *my asking* I was informed that I passed the alcohol test. During the booking process, an X-ray revealed an anomaly in my stomach. I underwent multiple excessive scans, approximately 4-5 times, performed by an apparent trainee, who also struggled to obtain my fingerprints.

14. Trooper Kanyuh concluded that I had swallowed a bag of drugs and pressured me to confess to avoid additional charges. I was required to use the restroom publicly, and Officer Kanyuh rudely yelled at me, "Don't flush!"

15. The X-ray anomaly was later determined to be gas bubbles in my stomach, proving Trooper Kanyuh's theory to be baseless.

16. In multiple instances throughout the night, Trooper Okaiye misled me to believe that I could post bail and head home after booking, but upon arrival at the jail, he

## AFFIDAVIT OF DAKARAI LARRIETT

expressed "surprise" that I had to spend 6 hours "sobering up" before I could post bond. He also expressed "astonishment" that I was not permitted to use my cell phone in the jail and stated that he would have allowed me to do so before the booking had he known the rules in Berrien County. He stated that he was from Wayne County, MI and assumed the procedures were the same in Berrien County. The Booking Officer added that it was unusual for one to be detained based upon such light evidence.

17. After being admitted to the jail, I was not allowed to inform my colleagues and supervisor about my situation as my phone use was denied, and my belongings were shrink-wrapped. I explained that we primarily communicate through a work app called Teams and do not rely on phone, let alone landlines for communication.

18. Despite being told to expect a release for bond payment at 11 am, I was not called to pay the bond until 11:30 am. Ultimately, I was released at 12 pm. My driver license remained confiscated by Trooper Kanyuh pending the results of the drug test taken April 10. Trooper Okaiye told me that test takes 2 weeks or more to be returned. A Booking Officer at the jail told me that the test takes up to a *month*.

19. A friend who received one of my collect calls from the jail drove from Coldwater, MI, and accompanied me to retrieve my car from the location of the traffic stop at 3:45 pm.

20. On April 11, 2024 I ordered a 12-panel drug test from the urgent care which affirmed that I was negative for all drugs, including Marijuana.

21. These events provide a brief detailed account of the unlawful traffic stop, false arrest, and subsequent treatment during the process. It is clear that there were discrepancies, questionable actions, and potential biases exhibited by the officers involved.

I DECLARE THAT THE STATEMENTS ABOVE ARE TRUE TO THE BEST OF MY INFORMATION, KNOWLEDGE, AND BELIEF.

Date: 10/2/24

Dakarai Larriett

STATE OF Alabama
COUNTY OF Jefferson

*[Notary seal: Maeghan Rae Ramey, Notary Public, Alabama State at Large, Expires 1/11/2028]*

Page 3 of 4

## AFFIDAVIT OF DAKARAI LARRIETT

The foregoing instrument was acknowledged before me this  2nd  day of October 2024

**By Dakarai Lariett**

*Maeghan Ramey*

[Notary Seal: NOTARY PUBLIC — Maeghan Rae Ramey — Expires 1/11/2028 — ALABAMA STATE AT LARGE]